1  VINCENT D. HOWARD, State Bar No. 232478
   vhoward@howardnassiri.com
2  DAMIAN J. NASSIRI, State Bar No. 231667
   dnassiri@howardnassiri.com
3  GREGORY H.D. ALUMIT, State Bar No. 257124
   gregory.alumit@howardnassiri.com
4  **HOWARD | NASSIRI, PC**
   1600 South Douglass Road, First Floor
5  Anaheim, CA 92806
   (800) 872-5925 Telephone
6  (888) 533-7310 Facsimile
   www.HOWARDNASSIRI.com
7
8  Attorneys for Plaintiffs, GARY E. MERTAN and JILL L. MERTAN

9              **UNITED STATES DISTRICT COURT**
10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| 12  **GARY E. MERTAN and JILL L. MERTAN,** | CASE NO.: SAVC09-723DOC(PJWX) |
| 13              Plaintiffs, | **FOURTH AMENDED COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |
| 14  v. | |
| 15  **AMERICAN HOME MORTGAGE SERVICING INC.; AMERICAN HOME MORTGAGE; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSET TRUST 2006-2; AND DOES 1-10,** | 1. **TRUTH IN LENDING ACT VIOLATIONS –NOTICE OF RIGHT TO CANCEL** |
| | 2. **REAL ESTATE SETTLEMENT PROCEDURES ACT VIOLATIONS (*12 U.S.C. § 2605(e)(2)*)** |
| | 3. **BREACH OF CONTRACT – MORTGAGE COVENANTS** |
| **Defendants.** | 4. **CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 VIOLATIONS** |

///

**FOURTH AMENDED COMPLAINT FOR DAMAGES AND FOR**

**INJUNCTIVE RELIEFAND DEMAND FOR JURY TRIAL**

**I.**

**INTRODUCTION**

1.     This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§1601, et seq., Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq., and other statutory and common law in effect.  Plaintiffs GARY E. MERTAN and JILL L. MERTAN ("MERTANS" or "Plaintiffs"), bring this action against AMERICAN HOME MORTGAGE SERVICING INC. ("AHMSI"); AMERICAN HOME MORTGAGE; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSET TRUST 2006-2 ("DEUTSCHE BANK"); and DOES 1-10 (collectively "Defendants") based, in part, on Defendants' failure to comply with numerous Federal and State laws and regulations.

**II.**

**PARTIES**

2.     Plaintiffs, GARY E. MERTAN and JILL L. MERTAN, are natural persons, and at all times relevant, residents of the real property located at 18371 Basswood Street, Fountain Valley, California 92708 (the "Subject Property").

3.     Defendant AHMSI is and at all times relevant was a Delaware Corporation with a principal place of business of 4600 Regent Blvd., Ste 200, Irving, TX 75063.  AHMSI is licensed to do business in California and transacts business in Orange County, California and at all relevant times promoted, distributed, and/or purchased mortgage loans, an example of which is the subject of this Complaint throughout the United States, including California.  AHMSI has significant contacts with Fountain Valley, California, and the activities complained of herein occurred, in whole or in part, in Fountain Valley, California.  AHMSI's

1   registered agent for service of process in the State of California is CT Corporation

2   System, 818 West Seventh St., Los Angles, CA 90017.

3       4.    Defendant AMERICAN HOME MORTGAGE is and at all times

4   relevant was a California Corporation with a principal place of business of 111

5   Pacifica Suite 305, Irvine, CA 92618.   AMERICAN HOME MORTGAGE is

6   licensed to do business in California and transacts business in Orange County,

7   California and at all relevant times promoted, distributed, and/or purchased

8   mortgage loans, an example of which is the subject of this Complaint throughout the

9   United States, including California.   AMERICAN HOME MORTGAGE has

10  significant contacts with Fountain Valley, California, and the activities complained

11  of herein occurred, in whole or in part, in Fountain Valley, California.

12      5.    Plaintiffs believe that Defendant DEUTSCHE BANK is and at all times

13  relevant was a Delaware Corporation with a principal place of business of One

14  Beacon St. 14th Floor, Boston, MA 02108. DEUTSCHE BANK is licensed to do

15  business in California and transacts business in Orange County, California and at all

16  relevant times promoted, distributed, and/or purchased mortgage loans, an example

17  of which is the subject of this Complaint throughout the United States, including

18  California.   DEUTSCHE BANK has significant contacts with Fountain Valley,

19  California, and the activities complained of herein occurred, in whole or in part, in

20  Fountain Valley, California. DEUTSCHE BANK's registered agent for service of

21  process in the State of California is CT Corporation System, 818 West Seventh St.,

22  Los Angeles, CA 90017.

23      6.    At all times mentioned herein, Defendants, and each of them, were

24  engaged in the business of promoting, marketing, distributing, selling, servicing,

25  owning, or are and were the assignees of the Option ARM loan that is the subject of

26  this Complaint, throughout the United States, including Orange County, California.

27      7.    Plaintiffs are informed, believe, and thereon allege, that each and all of

28  the aforementioned Defendants are responsible in some manner, either by act or

1 omission, strict liability, fraud, deceit, fraudulent concealment, negligence,
2 respondeat superior, breach of contract or otherwise, for the occurrences herein
3 alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by
4 the conduct of Defendants.

5       8.    Plaintiffs are informed, believe, and thereon allege, that at all times
6 material hereto and mentioned herein, each of the Defendants (both named and
7 DOE defendants) sued herein were the agent, servant, employer, joint venturer,
8 partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the
9 remaining Defendants and were at all times acting within the purpose and scope of
10 such agency, servitude, joint venture, division, ownership, subsidiary, alias,
11 assignment. alter-ego, partnership or employment and with the authority, consent,
12 approval and ratification of each remaining Defendant.

13       9.    At all times herein mentioned, each Defendant was the co-conspirator,
14 agent, servant, I employee, assignee and/or joint venturer of each of the other
15 Defendants and was acting within the course and scope of said conspiracy, agency,
16 employment, assignment and/or joint venture and with the permission and consent
17 of each of the other Defendants.

18       10.    Plaintiffs are informed, believe, and thereon allege, that Defendants,
19 and each of them, are, and at all material times relevant to this Complaint,
20 performed the acts alleged herein and/or otherwise conducted business in California.
21 Defendants, and each of them, are corporations or other business entities, form
22 unknown, have, and are doing business in this judicial district.

23       11.    Plaintiffs are informed, believe, and thereon allege, that DOES 1
24 through 10, inclusive, are securitized trusts, equity funds, collateralized debt
25 obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities
26 that acted as additional lenders, loan originators and/or are assignees to the loans
27 which are the subject of this action. Plaintiffs will seek leave of Court to replace the
28 fictitious names of these entities with their true names when they are discovered by

1   herein.

2       12.     The true names and capacities, whether individual, corporate, associate

3   or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are

4   unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by

5   such fictitious names.  Plaintiffs allege, on information and belief, that each Doe

6   defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of

7   Court to amend this Complaint when the names of said Doe defendants have been

8   ascertained.

9       13.     Plaintiffs are informed, believe, and thereon allege, that at all times

10  relevant during the liability period, that Defendants, and each of them, including

11  without limitation those Defendants herein sued as DOES, were acting in concert or

12  participation with each other, or were joint participants and collaborators in the acts

13  complained of, and were the agents or employees of the others in doing the acts

14  complained of herein, each and all of them acting within the course and scope of

15  said agency and/or employment by the others, each and all of them acting in concert

16  one with the other and all together.

17                              **III.**

18                    **GENERAL ALLEGATIONS**

19  **A. The Origination Of The Subject Option Adjustable Rate Mortgage Loan**

20      14.     On or about May 31, 2006, Plaintiffs refinanced their existing home

21  loan and entered into an Option Adjustable Rate Mortgage ("ARM") loan agreement

22  with AMERICAN HOME MORTGAGE.  The Option ARM loan was secured by

23  Plaintiffs' residence.  Attached hereto as Exhibit A is a true and correct copy of the

24  Promissory Note and Truth In Lending Disclosure Statement ("TILD") pertinent to

25  this action.

26      15.     Plaintiffs are informed and believe that this loan Option ARM loan was

27  subsequently assigned improperly to Defendant DEUTSCHE BANK.  Defendant

28  AHMSI currently services this Option ARM loan, Loan Number 0031169758.

16.     The original amount of the loan for the subject property was $383,259.00.  Due to the negative amortization feature on the subject Pay Option ARM loan which was not clearly and conspicuously disclosed to Plaintiffs, the principal balance has increased to approximately $406,225.65.

17.     The subject property is Plaintiffs' principal residence and was owner-occupied at the time of the subject loan transaction.

### 1.   The Option ARM Loan

18.     The Pay Option ARM, is a complicated mortgage product which entices consumers by offering a very low "teaser" rate — often as low as 1% — for an introductory period of one or three months.  At the end of the introductory period, the interest rate increases dramatically.  Despite the short duration of the low initial interest rate, AMERICAN HOME MORTGAGE's Pay Option ARMs often include a one, two or three-year prepayment penalty.

19.     When the teaser rate on a Pay Option ARM expires, the loan immediately becomes an adjustable rate loan.  Unlike most adjustable rate loans, where the rate can only change once every year or every six months, the interest rate on a Pay Option ARM can change every month (if there is a change in the index used to compute the rate).

20.     These Pay Option ARMs were typically tied to either the "MTA," "LIBOR" or "COFI" index.  The MTA index is the 12-month average of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board.  The LIBOR (London Interbank Offered Rate) index is based on rates that contributor banks in London offer each other for inter-bank deposits.  Separate LIBOR indices are kept for one month, six-month, and one-year periods, based on the duration of the deposit.  For example, the one-year LIBOR index reported for June 2009 is the rate for a twelve-month deposit in U.S. dollars as of the last business day of the previous month.

21.     Although the interest rate increases immediately after the expiration of the short period of time during which the teaser rate is in effect, a borrower with a Pay Option ARM has the option of making monthly payments as though the interest rate had not changed.   Borrowers with Pay Option ARMs typically have four different payment options during the first five years of the loan.  The first option is a "minimum" payment that is based on the introductory interest rate.

22.     The minimum payment on a Pay Option ARM usually is less than the interest accruing on the loan.   The unpaid interest is added to the principal amount of the loan, resulting in negative amortization.   According to Plaintiffs' TILD, the minimum payment remains the same for approximately four years. (See TILD which is attached and incorporated herein as Exhibit A).   At the fifth year, the payment will be "recast" to be fully amortizing, causing a substantial jump in the payment amount often called "payment shock."

23.     The loan balance on a Pay Option ARM, however, also has a negative amortization cap, typically 110% of the original principal of the loan.   Plaintiffs' loan contained a cap of 110%.   (See section 4(H) of Plaintiffs' Promissory Note which is attached and incorporated herein as Exhibit A).  If the balance hits the cap, the monthly payment is immediately raised to the fully amortizing level (i.e., all payments after the date the cap is reached must be sufficient to pay off the new balance over the remaining life of the loan).   When that happens, the borrower experiences significant payment shock.  A borrower with a Pay Option ARM with a 1% teaser rate, who is making the minimum payment, is very likely to hit the negative amortization cap and suffer payment shock well before the standard 5-year recast date.

24.     Instead of making the minimum payment, the borrower has the option of making an interest-only payment for five years.  The borrower then experiences payment shock when the payment recasts to cover both principal and interest for the remaining term of the loan.  Alternatively, the borrower can choose to make a fully

1   amortizing principal and interest payment based on either a 15-year or a 30-year
2   term.

3       25.    The ever-increasing monthly payments and payment shock
4   characteristic of Pay Option ARMs are illustrated by the following example of
5   Plaintiffs' loan. The loan had an initial principal balance of $383,259.00, a teaser
6   rate of 1.900%, and a margin of 2.450% (such that after the teaser rate expired, the
7   interest would be the MTA rate plus 2.4500%, rounded to the nearest 0.001
8   percent). After the teaser rate expired, based on the MTA rate as of the date the
9   borrower obtained the loan (5.05%), the interest rate would be approximately 7.5%.
10  Assuming the 7.5 % interest rate remained in place, and the borrower chose to make
11  the minimum payment for as long as possible, the payment schedule would be
12  approximately as follows according to Plaintiffs' TILD:

13      a.    $1,397.51 per month for the first four years;

14      b.    $2,831.02 per month for the remaining twenty-six years on the loan.

15      26.    Once the payments reach $2,831.02, this Pay Option ARM will have
16  negatively amortized such that the balance of the loan will have increased to
17  approximately $431,157.24. At that point, the Plaintiffs will be faced with a
18  payment more than two times greater than the initial payment and likely will be
19  unable to refinance unless their home has increased in value at least commensurately
20  with the increased loan balance. In addition, increases in the 12 Month MTA rate
21  could cause the borrower to hit the negative amortization cap earlier, and also could
22  result in even higher payments.

23      27.    During the underwriting process, AMERICAN HOME MORTGAGE
24  did not consider whether Plaintiffs would be able to afford such payment shock.
25  Further, with respect to Plaintiffs' finances, even the interim increases in the
26  minimum payment have caused dramatic hardship for the borrower.

27

28

28.     Plaintiffs were easily distracted from the fine print in the loan documents and did not fully understand the terms or the financial implications of the subject Pay Option ARM.

29.     When a borrower such as Plaintiffs obtained a Pay Option ARM from AMERICAN HOME MORTGAGE, the only initial monthly payment amount that appeared anywhere in their loan documents was the minimum payment amount. For example, Plaintiffs' loan only disclosed the initial monthly payment amount of $1,397.51. In other words, documents provided to the borrower assumed he or she would make only the minimum payment. Thus, a borrower would not know the monthly payment necessary to make a payment that would, for example, cover accruing interest, until he or she received the first statement after the expiration of the teaser rate, well after all loan documents were signed.

30.     AMERICAN HOME MORTGAGE and the brokers it accepted as its "business partners" misrepresented or obfuscated the true terms of the Pay Option ARMs offered by AMERICAN HOME MORTGAGE, including but not limited to misrepresenting or obfuscating the amount of time that the interest rate would be fixed for the loan, misrepresenting or obfuscating the risk of negative amortization and the fact that the payment rate was not the interest rate, and misrepresenting or obfuscating that the minimum payment would not apply for the life of the loan.

31.     AMERICAN HOME MORTGAGE and its business partner brokers also misrepresented or obfuscated how difficult it might be for borrowers to refinance a Pay Option ARM loan. In fact, after making only the minimum payment, because of negative amortization the borrower likely would not be able to refinance a Pay Option ARM loan unless the home serving as security for the mortgage had increased in value. This is particularly true in cases for borrowers whose loans have a very high loan-to-value ratio.

32.     AMERICAN HOME MORTGAGE and its business partner brokers often misrepresented or obfuscated the fact that a particular Pay Option ARM

1  included a prepayment penalty and failed to explain the effect that making only the
2  minimum payment would have on the amount of the prepayment penalty. If a
3  borrower seeks to refinance after having made the minimum payment for an
4  extended period, but while a prepayment penalty is still in effect, the negative
5  amortization can cause the amount of the prepayment penalty to increase.
6  Prepayment penalties typically equal six months worth of accrued interest. As
7  negative amortization causes the loan principal to increase, it also causes an increase
8  in the amount of interest that accrues each month, thereby increasing the
9  prepayment penalty.

10      33.    Because Pay Option ARMs start with lower monthly payments and
11  interest rates than most other types of loan products, and given their complex nature,
12  AMERICAN HOME MORTGAGE was able to easily sell the loan to Plaintiffs by
13  focusing on the initial low monthly payments and/or rates and by obscuring or
14  misrepresenting the true risks of such loans.

15      34.    AMERICAN HOME MORTGAGE "sold the payment" to Plaintiffs by
16  emphasizing the low minimum payment and how much the Plaintiffs would "save"
17  every month by making such a low payment, without discussing the payment shock
18  and negative amortization that would inevitably result if Plaintiffs made only the
19  minimum payment. Given the complexity of Pay Option ARMs, such a presentation
20  easily misled Plaintiffs regarding the long-term affordability of Plaintiffs' loan.

21      35.    AMERICAN HOME MORTGAGE also represented to Plaintiffs that
22  the initial monthly payment would last for the entire term of the loan, a period
23  longer than that provided for by the loan's terms.

24      36.    As described herein, AMERICAN HOME MORTGAGE and their
25  network of authorized, contracted brokers have defrauded countless borrowers
26  across the nation in an undisclosed, systematic scheme designed to steer borrowers
27  into subprime mortgages and loans irrespective of whether (i) the borrower would
28  have qualified for a "prime loan" or (ii) the borrower was unable to meet the

1   financial terms of the subprime mortgage.   Indeed, Defendants have placed these

2   borrowers in these mortgages without performing an appropriate analysis of the

3   suitability of such loans to the borrowers' situation.   This has been done to

4   maximize AMERICAN HOME MORTGAGE's ability to make huge profits in the

5   secondary market in which subprime mortgages are bundled into securities and sold

6   as investments.

7   **B. The Truth In Lending Act**

8   37.   15 U.S.C. §1601, et seq., is the Federal Truth in Lending Act ("TILA").

9   The Federal Reserve Board of Governors implements the Federal TILA through

10   Regulation Z (12 C.F.R. § 226 ) and its Official Staff Commentary.   Compliance by

11   lenders with Regulation Z became mandatory October 1, 1982.   Likewise, Official

12   Staff Commentary issued by the Federal Reserve Board is also binding on all

13   lenders.

14   38.   The purpose of TILA is to protect consumers.   This is stated in 12

15   C.F.R. § 226.1, which reads:

16   **§ 226.1 Authority, purpose, coverage, organization, enforcement
17   and liability . . .**
18   (b) Purpose. The purpose of this regulation is to promote the informed
    use of consumer credit by requiring disclosures about its terms and
19   costs. The regulation also gives consumers the right to cancel certain
20   credit transactions that involve a lien on a consumer's principal
    dwelling . . .
21
22   39.   Reg. Z also mandates very specific disclosure requirements regarding
23   home loans with which lenders, including Defendants, must comply:

24   **§ 226.17. General disclosure requirements.** (a) Form of disclosures.
25   (1) The creditor shall make the disclosures required by this subpart
    **clearly and conspicuously** in writing, in a form that the consumer may
26   keep. The disclosures shall be grouped together, shall be segregated
    from everything else, and shall not contain any information not directly
27   related to the disclosures required under § 226.18. (emphasis added).

28

40.     The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing.

41.     Plaintiffs' loan is subject to the Federal TILA, 15 U.S.C. § 1601 et seq., and its implementing regulations, 12 C.F.R. Part 226 ("Reg. Z"). TILA grants a consumer a three-day right to cancel certain types of real estate loan transactions. This three-day right to cancel applies to Plaintiffs' loan.

42.     Pursuant to 15 U.S.C. § 1635(a), the three-day cancellation period begins upon the later of the following events: (1) the "consummation of the transaction;" (2) the "delivery of the information and rescission forms" required by that section; or (3) delivery of accurate "material disclosures" required by TILA. 5 U.S.C. § 1635(a). The "material disclosures" that must be delivered include accurate disclosure of the annual percentage rate, all finance charges and the amount financed. 15 U.S.C. § 1602(u). If the required notice of cancellation is not properly provided, or if the required "material disclosures" are not delivered, then the right to cancel extends to three years after the date of the loan. 15 U.S.C. § 1635(f).

43.     A consumer may exercise the right of rescission against an assignee whenever the consumer would have been able to exercise that right against the original creditor. 15 U.S.C. § 1641(c).

**1.     The Defective Notices Of Right To Cancel**

44.     AMERICAN HOME MORTGAGE was required to provide Plaintiffs certain disclosures pursuant to the TILA. Regulation Z mandates the content of the rescission notice. For both open-end and closed-end credit, the notice must identify the transaction, and must disclose, among other things, the date the rescission period expires, and must be signed by the borrower. See Regulation Z §§ 226.15(b), 226.23(b). Each Plaintiff was not provided with the disclosures pursuant to the TILA, including two (2) properly prepared Notices of Right to Cancel for the

1 subject loan.  Attached hereto as Exhibit B is a true and correct copies of the Right

2 to Cancel Notices pertinent to this action.

### 2.   The Failure to Deliver Accurate Material Disclosures

4   45.   AMERICAN HOME MORTGAGE, furthermore, violated TILA by

5 failing to deliver accurate material disclosures to Plaintiffs.

### a. AMERICAN HOME MORTGAGE, DEUTSCHE BANK,
### And DOES 1-10's Failure To Clearly And Conspicuously
### Disclose A Single Annual Percentage Rate

9   46.   15 U.S.C. § 1638(a)(4) requires lenders to disclose only one annual

10 percentage rate ("APR") and not an additional APR that is only applicable for the

11 first 60 days of a loan.

12   47.   The Federal Reserve Board's ("FRB") commentary to 12 C.F.R §

13 226.(17)(c)-6 requires that the APR must "reflect a composite annual percentage

14 rate based on the initial rate for as long as it is charged and, for the remainder of the

15 term, the rate that would have been applied using the index or formula at the time of

16 consummation."

17   48.   15 U.S.C. § 1638(a)(8) and 12 C.F.R § 226.18(e) also requires lenders

18 to provide a descriptive explanation of the APR.

19   49.   12 C.F.R .§ 226.18 (e) defines "APR" as the cost of credit expressed as

20 a yearly rate.

21   50.   12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 requires lenders to make

22 disclosures concerning the APR in a clear and conspicuous manner and a misleading

23 disclosure is as much a violation of TILA as a failure to disclose at all.

24   51.   In addition, the FRB's commentary § 226.17(a)(1)-1 provides that

25 TILA's clear and conspicuous requirement applies to the disclosure and explanation

26 of the cost of the loan as an APR, and where there is a contradiction between the

27 TILD and other information provided to the borrower, the disclosure is unclear.

28 ///

52.     At all times relevant during the liability period, Defendants provided Plaintiffs with a Note that states, at paragraph 2, "I will pay interest at a *yearly rate* of 1.900%." However, in the TILD, in the box entitled "ANNUAL PERCENTAGE RATE" it describes the APR as "[t]he cost of your credit as a *yearly rate*" and then lists an APR of "*6.759%*."

53.     At all times relevant during the liability period, Defendants violated § 226.1 7(a)(1)-1 by listing two completely different APRs in the loan documents. In particular, for Plaintiffs, the TILD lists an APR of *6.759%*. However, the Note lists an APR of "1.900%." Thus, the "1.900%" APR stated in the Note contradicts the "*6.759%*" APR Defendants stated in the TILD.

54.     At all times relevant during the liability period, Defendants failed to clearly and conspicuously explain in the Note or TILD that the low APR (the same APR upon which Defendants base the written payment schedule provided to Plaintiffs) was only offered for the first sixty (60) days of the loan.

55.     At all times relevant during the liability period, Defendants also failed to clearly, conspicuously and accurately disclose the APR that it charged Plaintiffs on their loan. Defendants also failed to disclose, and by omission, failed to inform Plaintiffs that the APR listed in the TILD was not the APR used to determine the first four years of payments listed in the very same TILD; rather, Defendants listed payment amounts for the first four years of the loan based on the APR listed in the Note which was correct for *only* sixty days.

56.     At all times relevant during the liability period, Defendants created and caused the contradiction in the loan documents by purposefully disclosing two different APRs in the loan documents it provided to Plaintiffs.

///

///

///

///

FOURTH AMENDED COMPLAINT
- 14 -

1
2
3
4

**b. AMERICAN HOME MORTGAGE, DEUTSCHE BANK,
And DOES 1-10's Failure To Clearly And Conspicuously
Disclose That The Payment Schedule Is Not Based On The
APR Stated In The Truth In Lending Disclosure Statement**

5   57.   12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make
6   disclosures concerning the annual interest rate and payments in a clear and
7   conspicuous manner.  Further, a misleading disclosure is as much a violation of
8   TILA as a failure to disclose at all.

9   58.   As for Plaintiffs' loan. Defendants violated 12 C.F.R. § 226.17 and 12
10  C.F.R. § 226.19 in that they failed to clearly and conspicuously disclose the annual
11  interest rate upon which the payments listed in the TILD is based.

12  59.   The scheduled payment amounts and APR listed in the Note and TILD
13  for the subject loan is unclear and inconspicuous.  In fact, the payment amounts for
14  the first four years are not based on the APR listed in the TILD but instead, were
15  based upon an APR listed in the Note that existed for only sixty (60) days.

16  60.   At all times relevant, Defendants knowingly and intentionally included
17  in the TILD a schedule of payments which was not based upon the interest rate
18  listed in this same document. Defendants' failure to clearly and conspicuously
19  disclose the payment amounts due based on the listed APR was, and is, deceptive.

20  61.   Further, in addition to Defendants' failure to disclose in the Note and the
21  TILD that the payments listed were not based upon the APR listed, Defendants
22  knowingly, intentionally, expressly, and/or impliedly represented in the loan
23  documents that the payments would be applied to both principal and interest.
24  However, in truth, if Plaintiffs followed the payment schedule provided by
25  Defendants, the payments were guaranteed to be insufficient to pay the principal and
26  interest on the loan.

27  62.   At all times relevant, Defendants failed to clearly and conspicuously
28  disclose to Plaintiffs that if they made payments according to the payment schedule

1  set forth in the TILD, that negative amortization was not just a mere possibility, it
2  was an absolute certainty.

3    63.    At all times relevant, Defendants purposefully and intentionally failed to
4  disclose to Plaintiffs, the annual interest rate upon which the payment schedule was
5  based in order to mislead and deceive Plaintiffs into believing that they would be
6  getting a loan with a low fixed payment rate that would be sufficient to pay both
7  interest and principal.

8    64.    At all times relevant, the payment amount provided by Defendants was
9  intended to and did deceive consumers into falsely believing they would, in fact,
10 receive the low interest rate upon which the payment schedule is based.  While the
11 Note states the amount of Plaintiffs initial monthly payment, however, the initial
12 monthly payment amounts stated in the Note and TILD are not, in anyway related to
13 the interest rate listed in the Note and TILD.

14   65.    Defendants employed the aforementioned bait-and-switch tactic.  In
15 particular, had Defendants clearly and conspicuously disclosed a payment amount
16 sufficient to cover both principle and interest, the payment amounts would have to
17 have been almost double the payment amounts listed.

18   66.    The TILD is also deceptive for much the same reason.  The TILD lists
19 a schedule of payments, yet for up to the four years the listed payment amounts have
20 no relation to, and are also not based on the annual interest rate listed in the TILD.

21   67.    At all times relevant, Defendants failed to clearly, conspicuously, and
22 accurately disclose a payment amount that corresponds to the APR being charged on
23 the loan and that was sufficient to pay the true costs of the loan.   Plaintiffs
24 reasonably believed that if they made the payments according to Defendants'
25 payment schedule, the payments would, in fact, be paying off the loan.  However,
26 the true fact is that the payment amounts stated in Defendants' payment schedule
27 did not include any principal on the loan at all and only covered a portion of the
28 interest Defendants were charging on this loan.

68.    Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that disclosures be in a reasonably understandable form.  For example, while the regulation requires no mathematical progression or format, **the disclosures must be presented in a way that does not obscure the relationship of the terms to each other. . ."**

69.    At all times relevant, Defendants' Option ARM loans violated 12 C.F.R. § 226.17(a)(1) in that the relationship between the payments, for up to the first four years of the loan, bear no relationship to the APR listed in the TILD. Therefore, as a direct and proximate result, the form of disclosures used by Defendants obscured the relationship between the APR listed in the Note and the APR listed in the TILD and the payment schedule.

### c. AMERICAN HOME MORTGAGE, DEUTSCHE BANK, And DOES 1-10's Failure To Clearly And Conspicuously Disclose Negative Amortization

70.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19. Certain residential mortgage and variable-rate transactions. . .**
>
> (b) Certain variable-rate transactions.  If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier... (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations,*

1     *negative amortization, and interest rate carryover.*

2     (Emphasis added).

3     71.    The negative amortization disclosure is required and must be made

4 clearly and conspicuously, and done in a manner that does not obscure its

5 significance. The disclosure must state whether the loan and payments established

6 under the terms dictated by the Defendants is a negative amortizing loan.

7     72.    In 1995, and continuing each time new Official Staff Commentary was

8 issued, the Federal Reserve Board made clear that when the loan was a variable rate

9 loan with payment caps, such as the subject loan, that the disclosure requires a

10 definitive statement about negative amortization:

11     12 CFR Part 226

12     [Regulation Z; Docket No. R-0863]

13     Monday, April 3, 1995

14     AGENCY: Board of Governors of the Federal Reserve

15     System. ACTION: Final rule; official staff

16     interpretation. "For the program that gives the borrower

17     an option to cap monthly payments, the creditor must

18     fully disclose the rules relating to the payment cap

19     option, including the effects of exercising it (such as

20     **negative amortization** occurs and that the principal

21     balance **will increase**)..." (Found at C.F.R. § 226.19)

22     (Emphasis added).

23     73.    At all times relevant, statutory and common laws in effect make it

24 unlawful for a lender, such as Defendants, to fail to comply with the Federal

25 Reserve Board's Official Staff Commentary as well as Regulation Z and TILA.

26     74.    Defendants sold Plaintiffs an Option ARM loan which has a variable

27 rate feature with a payment cap. Defendants failed to include any reference in the

28 TILD or in the Note that negative amortization would occur if Plaintiffs followed

the payment schedule provided by Defendants.

75.    In fact, the only place in the Note where Defendants even inferentially reference negative amortization caused Plaintiffs and all other similarly situated reasonable persons to believe that negative amortization is only a mere possibility, rather than an absolute certainty. In fact, these loans were designed in such a way so as to make negative amortization an absolute certainty. And, even when a separate explanation was provided, Defendants omitted the important material fact that this loan and payment schedule would, in fact, guarantee negative amortization.

76.    Defendants' statement in the Note, at paragraph 4(G), that Plaintiffs' monthly payment "could be less than...the amount of the interest portion . . . of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the monthly Maturity Date in substantially equal payments" was a half-truth and did not alert or inform Plaintiffs that the payment schedule provided by Defendants would absolutely guarantee that negative amortization was going to occur on this loan. Rather, Defendants made it appear that as long as the payments were made according to the schedule listed in the TILD, that there would be no negative amortization.

77.    Plaintiffs' loan also states in paragraph 3(A) that "I *will* pay Principal and interest by making payments every month." (emphasis added). However, the true facts are that if plaintiffs followed the payment schedule listed by Defendants in the TILD, negative amortization was absolutely certain to occur as the payment would not be enough to cover all of the interest due, let alone pay any of the principal owed.

78.    In addition, Paragraph 2 of the Note states, "I will pay interest at a yearly rate of 1.900%. Paragraph 4(A) "Interest Rate and Monthly Payment Changes" states, "The interest rate I will pay *may* further change on the 1st day of August, 2006, and on that day every month thereafter." (Emphasis added). According to paragraph 4(C), "Before each Change Date, the Note holder will

1    calculate my new interest rate by adding Two and 450 Thousandths percentage

2    points 2.450 % ("Margin") to the Current Index." According to the formula for the

3    change of the interest rate, it appears certain that the interest rate would change on

4    the first day of the loan when Plaintiffs' first payment was due (August 1, 2006). In

5    addition, it appears as though the initial teaser interest rate of 1.900% would only be

6    applicable for two months (June 2006 – July 2006), yet the first year of payments

7    listed on the payment schedule ($1,397.51) were calculated based on the 1.900%

8    teaser rate, a payment which in no way would cover principal and interest and which

9    would certainly cause negative amortization to occur.

10        79.    At all times relevant, Defendants' statement in the Note, TILD, and any

11    other disclosures they provided, described negative amortization as only a mere

12    possibility, and therefore was misleading and deceptive. In fact, Defendants' Option

13    ARM loan was designed in such a way as to guarantee negative amortization. TILA

14    demands more than a statement that the payment could be less, or "may" be less,

15    when Defendants knew that the payments were less, and would always be less, than

16    the full amount required to pay both principle and interest.

17               **d. AMERICAN HOME MORTGAGE And DEUTSCHE**

18                  **BANK's Failure to Clearly and Conspicuously Disclose The**

19                  **Legal Obligation**

20        80.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect

21    the terms of the legal obligation between the parties."

22        81.    Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires

23    that: "[t]he disclosures shall reflect the credit terms to which the parties are legally

24    bound as of the outset of the transaction. In the case of disclosures required under §

25    226.20(c), the disclosures shall reflect the credit terms to which the parties are

26    legally bound when the disclosures are provided."

27        82.    The Official binding staff commentary further states, at 12 C.F.R. §

28    226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in

1    the note or contract that evidences the agreement."

2        83.    Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f
3    a loan contains a rate or payment cap that would prevent the initial rate or payment,
4    at the time of the first adjustment, from changing to the rate determined by the index
5    or formula at consummation, the effect of that rate or payment cap should be
6    reflected in the disclosures."

7        84.    At all times relevant during the liability period, Defendants' Option
8    ARM loan violated 12 C.F.R. § 226.17(c) in that the Note and TILD did not
9    disclose, and by omission, failed to disclose what Plaintiffs were legally obligated to
10    pay.  In particular, the Note charged these borrowers a much higher monthly amount
11    than what Defendants disclosed.  Defendants accomplished this deception by only
12    listing a partial payment in the TILD, rather than a payment amount that was
13    sufficient to pay what these borrowers were being charged for their loans, and were
14    legally obligated to pay.

15        85.    As a direct and proximate result of Defendants' omissions and failures
16    to clearly and conspicuously disclose Plaintiffs' legal obligations under the loan,
17    Defendants took the partial payments and secretly added the deficit, each month, to
18    principal, thereby causing negative amortization to occur.

19        **e.  AMERICAN HOME MORTGAGE And DEUTSCHE**
20            **BANK's Failure to Disclose the Composite Annual**
21            **Percentage Rate**

22        86.    Defendants provided Plaintiffs with multiple, conflicting annual
23    interest rates when describing the costs of this loan.  On the TILD, Defendants set
24    forth one annual interest rate, while on the Note, Defendants set forth a different
25    annual interest rate.

26        87.    The FRB's Commentary to 12 C.F.R § 226.(17)(C)-6 requires that the
27    APR must "reflect a composite annual percentage rate based on the initial rate for as
28    long as it is charged and, for the remainder of the term, the rate that would have

1   been applied using the index or formula at the time of consummation."

2   "in a variable-rate transaction with a . . . discounted or
3   premium rate, **disclosures should not be based solely on the
    initial terms**. In those transactions, **the disclosed annual
4   percentage rate should be a composite rate** based on the
5   rate in effect during the initial period and the rate that is the
    basis of the variable-rate feature for the remainder of the
6   term." (Emphasis added).

7   88.   The reason for this requirement is clear.  Consumers cannot make an

8   informed decision when they cannot compare the cost of credit to other proposals.

9   It is therefore incumbent upon Defendants to show the composite interest rate in

10  effect so that the borrowers can understand exactly what they will be paying for the

11  loan.

12  89.   A lender violates TILA, and Reg. Z by failing to list the composite

13  annual interest rate in variable rate loans that have a discounted initial rate.  The

14  loan sold to Plaintiffs by Defendants is a variable-rate loan.  At all times relevant

15  during the liability period, Defendants listed an annual interest rate in the Note that,

16  in truth, would only be provided for the first sixty (60) days of a thirty year loan,

17  and would, with one hundred percent certainty, be increased after the first two

18  months.  Because Defendants failed to clearly and conspicuously disclose the

19  composite annual percentage rate on this loan, and instead listed a different interest

20  rate in the documents provided Plaintiffs, Defendants violated TILA and Regulation

21  Z, and failed to provide disclosures that did not obscure relevant information.

22  **f.   AMERICAN HOME MORTGAGE And DEUTSCHE**

23  **BANK's Failure to Clearly and Conspicuously Disclose that**

24  **the Initial Interest Rate is Discounted**

25  90.   Variable rate loans are based on a "margin" and an "index."  The index

26  is often the Prime Rate or the LIBOR exchange rate.  The margin is the amount the

27  lender charges over and above that indexed rate.

28  ///

91.     TILA and Regulation Z require that when the interest rate on a loan is a "discounted rate" (that is, not based on the index and margin) a separate disclosure is required. The disclosure must also inform borrowers that, after the discounted rate falls away, the interest rate will increase and it must conspicuously describe all of the circumstances under which the interest rate will increase. Further, the disclosure must inform the borrower what the true cost of the loan is.

92.     The Federal Reserve Board established disclosure requirements for variable rate loans.  12 C.F.R. § 226.19 requires lenders to disclose the frequency of interest rate and payment adjustments to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than payment changes, a creditor must disclose the frequency and timing of both types of changes.

93.     The Notes at issue only stated that the interest rate "may" increase in the future.  However, it was absolutely certain, and not merely possible, that the interest rate would increase above the discounted annual interest rate after sixty (60) days.   At all times relevant, Defendants failed to clearly, conspicuously and unambiguously disclose this critical fact as required by law.

94.     Further violating TILA's disclosure requirements, Defendants' loan documents state that the interest rate *may* increase during the term of this transaction if the index increases.  That statement is incomplete and misleading, as an increase in the index was not the only thing that could cause an increase in the interest rate. Because the disclosed interest rate was discounted, it was absolutely certain to increase even without any change in the index.  Thus, Defendants' disclosures were unclear, inconspicuous, ambiguous and misleading in violation of TILA.

95.     In stark contrast to the incomplete, misleading, contradictory and false statements that Defendants made to Plaintiffs regarding the interest rate applicable to the loan here at issue, Defendants unambiguously told their investors (but not Plaintiffs) that the APR listed in the Note would apply for just one or two months, after which time it would be replaced by a monthly adjustable interest rate based on

1   the margin and index.

2       96.    Defendants failed to disclose, and by omission, failed to inform

3   Plaintiffs that the initial interest rate was discounted, and that it was absolutely

4   certain to increase even when the index did not rise.  Due to the initial discounted

5   interest rate being listed at 1.900%, the interest rate would increase because the

6   index and margin were several points higher.  Even though Defendants may have

7   did provided a disclosure that stated the initial payment was not based on the index,

8   they did so in a manner that was not clear and conspicuous.  Because the loan

9   documents failed to provide this extremely important material information in a clear

10  and conspicuous manner that did not obscure its importance, Defendants disclosure

11  failed to satisfy the requirements of TILA.

12      97.    Defendants failed to disclose to Plaintiffs that their interest rate was,

13  with 100% certainty, going to increase, regardless of whether the index upon which

14  their loans are based changed.  As such Defendants violated TILA and Regulation Z

15  by providing Plaintiffs with unclear, deceptive and poorly drafted or intentionally

16  misleading disclosures.

17      98.    Defendants also failed to disclose all of the ways by which the interest

18  rate applicable to Plaintiffs' loan could increase, in violation of TILA.

19            **g.  AMERICAN HOME MORTGAGE And DEUTSCHE**

20                 **BANK's Failure To Clearly and Conspicuously Disclose the**

21                 **Effect of the Payment Cap on the True Cost Of The Loan**

22      99.    The Option ARM loan at issue contained a variable rate feature with an

23  initial teaser rate with payment caps. The payment cap is a limit on how much the

24  payment may be increased annually.  Its purpose is to provide borrowers with a limit

25  on how much their payment can increase from year to year.  The loan issued by

26  Defendants had a 7.5% payment cap, which means that Plaintiffs would only see

27  their payment rise each year by a maximum of 7.5%. (that is, a $1,000 monthly

28  payment in year one, could go to a $1,075 payment in year two.)

100.   The Official Staff Commentary to 12 C.F.R. § 226.1 7(c)(1)(10)(iii) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should he reflected in the disclosures." Thus, at all times relevant during the liability period, Defendants had a duty to Plaintiffs to disclose in the payment schedule of the TILD the effect the payment cap would have on the loans.

101.   Defendants failed to disclose, and by omission, failed to inform Plaintiffs that the payment cap would cause hundreds, if not thousands of dollars, each month, to be secretly added to principle.

102.   As a direct and proximate result, Defendants failed to disclose, and by omission, failed to inform Plaintiffs of the effect of the payment cap in violation of 12 C.F.R. § 226.17.

103.   These violations of TILA and Regulation Z described in this Complaint are apparent to DEUTSCHE BANK and DOES 1-10 because they maintain superior knowledge in the lending field as it is their primary business. Thus, assignee liability as outlined in 15 U.S.C. § 1641(e) is applicable to the DEUTSCHE BANK and DOES 1-10 herein.

### 3.   Plaintiffs' Notice To Defendants Of Their Election To Rescind

104.   A consumer may exercise their right to cancel a transaction by delivery of a written notification of the consumer's wish to cancel the transaction to the creditor's place of business. Notice is effective upon mailing and notice on the agent servicing the loan is effective notice on the holder of the mortgage. 12 C.F.R. § 226.23(a)(2).

105.   When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer is not liable for any amount, including any finance charge. 15 U.S.C. § 1635(b).

106.   Within twenty (20) days after the receipt of a consumer's election to cancel the transaction, the creditor must return to the consumer all money or property given, including all interest and finance charges paid, and shall take all action necessary or appropriate to reflect the termination of any security interest created under the transaction. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d).

107.   By letter dated March 16, 2009 (See Exhibit C attached and incorporated herein by reference), Plaintiffs, through their attorney, notified AHMSI and AMERICAN HOME MORTGAGE of their election to rescind the loan due to TILA violations.  In the notice, Plaintiffs offered to make arrangements for tender as might be required under TILA, Section 15 U.S.C. § 1635(b).

108.   Plaintiffs re-allege here that they can make arrangements for tender as might be required under TILA, Section 15 U.S.C. § 1635(b).  Financial ability to perform the tender can be shown by evidence that the property has considerably greater value than the debt being foreclosed.  The subject property is currently worth at least $550,000.  Since the property is worth more than the principal balance due on the subject loan, Plaintiffs have the ability to meet a tender obligation under the TILA after DEUTSCHE BANK tenders back to Plaintiffs all the interest, finance charges, and other fees paid by Plaintiffs to AMERICAN HOME MORTGAGE and DEUTSCHE BANK since the consummation of the subject loan.

109.   Despite having received notice of Plaintiffs' election to cancel on March 16, 2009, Defendants have failed to rescind the loan and have failed to take any steps necessary or appropriate to reflect the termination of the security interest created in connection with Plaintiffs' loan.  The failure to take such steps within 20 days of receipt of the rescission demand is a violation of TILA's Section 1635(b) and contrary to that provision's clear edict stating that said security interest is void upon delivery of the notice of the election to cancel.

///

///

## C. Facts With Respect To Defendants' Improper Servicing of Plaintiffs' Loan

110.    Plaintiffs have tendered to AHMSI their monthly mortgage payments but AHMSI has refused them by failing to apply theses payments to the principal and interest of the subject loan.

111.    Upon information and belief, Plaintiffs at no time missed any payments to AHMSI.  However, AHMSI began to reject their payments in June of 2009.

112.    Upon information and belief, Plaintiffs allege that if there is the sum of $3,645.56 allegedly "due" on the account, that sum must be the result of charges which are improper, illegal or unauthorized by the mortgage and note and/or by law.

113.    The actions of AHMSI in applying said improper, illegal or unauthorized charges are negligent, wanton or intentional and in violation of the note and mortgage executed by the Plaintiffs.

114.    Defendant AHMSI is engaged in and has engaged in a pattern and practice of mortgage loan servicing.  The natural consequences of which are to cause or create defaults on otherwise performing loans so that default servicing charges may be recovered for the servicing of the loan to increase the Defendants profits from mortgage servicing.

115.    The actions of AHMSI in this respect violate applicable servicing guidelines and violate the agreement between the Defendants and the owners of Plaintiffs' mortgage and note.

116.    AHMSI also engaged in some or all of the following practices with respect to the Plaintiffs and their mortgage account:    Defendants misapplied payments to the account, marked up charges to the account, improperly placed payments in suspense and failed to credit the payments to the account, made illegal, unauthorized or improper charges to the account in violation of law, the security instruments and/or various regulatory guidelines, paid one charge for a service to the account (for example, attorneys' fees, Broker price opinions, property inspection

1  charges, force placed insurance) but charged the Plaintiffs a higher amount than paid

2  for the service in violation of the law, the security instruments and/or various

3  regulatory guidelines, instituted an accounting system in the form of its mortgage

4  servicing software which created artificial, false or bogus defaults on the account for

5  the purpose of imposing fees and charges to the account of the Plaintiffs.

6  **FIRST CAUSE OF ACTION AGAINST AMERICAN HOME MORTGAGE,**

7  **DEUTSCHE BANK, AND DOES 1-10**

8  **(Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et. seq.* – Notice of**

9  **Right To Cancel)**

10  117.  Plaintiffs incorporate all preceding paragraphs as though fully set forth

11  herein.

12  118.  Plaintiffs have maintained all closing documents received at the signing

13  and have kept the documents securely at their home and will disclose and provide

14  said documents upon request in good faith.

15  119.  15 U.S.C § 1635(a) provides that the obligor to a credit transaction

16  secured by the obligor's dwelling shall "have the right to rescind the transaction

17  until midnight of the third business day following the consummation of the

18  transaction or the delivery of the information and rescission forms required under

19  this section together with a statement containing the material disclosures required

20  under this subchapter, whichever is later, by notifying the creditor, in accordance

21  with regulations of the Board, of his intention to do so.  The creditor shall clearly

22  and conspicuously disclose, in accordance with regulations of the Board, to any

23  obligor in a transaction subject to this section the rights of the obligor under this

24  section.  The creditor shall also provide, in accordance with regulations of the

25  Board, appropriate forms for the obligor to exercise his right to rescind any

26  transaction subject to this section." 15 U.S.C § 1635(a)

27  120.  15 U.S.C. § 1635(a) as implemented under Regulation Z § 226.23 (b),

28  requires that each borrower receive two (2) copies of the Right to Cancel Notice.

TILA requires that right to cancel notices clearly and conspicuously disclose the date the rescission period expires, and must be signed by the borrower. (15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(b)).

121. Failure to deliver the requisite rescission forms extends the right to rescind to 3 years after the consummation of the transaction. *Id.* at (a)(3).

122. AMERICAN HOME MORTGAGE did provide each Plaintiff with two "Right to Cancel" forms for the subject loan; however, the rescission expiration dates on all of these forms were left blank. (See Right to Cancel Notices, attached and incorporated herein as Exhibit B). Plaintiffs should have been provided with two properly executed Notices of Right to Cancel with the rescission expiration dates properly indicated for the subject loan.

123. As detailed above, AMERICAN HOME MORTGAGE also failed to deliver accurate "material disclosures" as required by 15 U.S.C. § 1635(a). The "material disclosures" that should have been delivered include the accurate disclosures of the annual percentage rate, all finance charges and the amount financed. 15 U.S.C.§ 1602(u).

124. Plaintiffs' right of rescission, therefore, is extended three years from the date of consummation of the loan transaction because AMERICAN HOME MORTGAGE failed to provide each Plaintiff with two properly executed Right to Cancel notices and failed to deliver accurate material disclosures to the Plaintiffs.

125. These violations of TILA and Regulation Z are apparent to DEUTSCHE BANK and DOES 1-10 because they maintain superior knowledge in the lending field as it is their primary business. Thus, assignee liability as outlined in 15 U.S.C. § 1641(e) is applicable to the DEUTSCHE BANK and DOES 1-10 herein.

126. WHEREFORE, Plaintiffs are entitled to an order declaring that Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiffs have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, for an order

1  rescinding Plaintiffs' mortgage, and for an order awarding attorneys' fees, litigation

2  costs, and other relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION AGAINST AHMSI, AMERICAN HOME MORTGAGE, DEUTSCHE BANK, AND DOES 1-10
#### (Violations of RESPA, *12 U.S.C. § 2605(e)(2)*)

6      127.   Plaintiffs incorporate all preceding paragraphs as though fully set forth

7  herein.

8      128.   *12 U.S.C. § 2605(e)(1)(B)* states, "For purposes of this subsection, a

9  qualified written request shall be a written correspondence, other than notice on a

10 payment coupon or other payment medium supplied by the servicer, that-- (i)

11 includes, or otherwise enables the servicer to identify, the name and account of the

12 borrower; and (ii) includes a statement of the reasons for the belief of the borrower,

13 to the extent applicable, that the account is in error or provides sufficient detail to

14 the servicer regarding other information sought by the borrower."

15     129.   On or about March 16, 2009, Plaintiffs mailed a demand for rescission

16 letter to Defendants AMERICAN HOME MORTGAGE and AHMSI, the current

17 servicer of the loan.  This demand for rescission letter, which is attached herein as

18 Exhibit C, sent by Plaintiffs to AMERICAN HOME MORTGAGE and AHMSI

19 constitutes a qualified written request for purposes of *12 U.S.C. § 2605* because the

20 letter identified Plaintiffs' names and account number, included a statement that the

21 account was in error due to the defective TILD and right to cancel forms, and

22 requested a copy of Plaintiffs' payment history, and other documentation showing

23 the loan disbursements, loan charges, payments made, and current principal balance

24 due.

25     130.   *12 U.S.C. § 2605(e)(2)* provides that not later than sixty (60) days,

26 excluding legal public holidays, Saturdays, and Sundays, after the receipt of a

27 qualified written request, the servicer shall –

28     **(A)** make appropriate corrections in the account of the borrower, including the

crediting of any late charges or penalties, and transmit to the borrower a written
notification of such correction (which shall include the name and telephone
number of a representative of the servicer who can provide assistance to the
borrower);

**(B)** after conducting an investigation, provide the borrower with a written
explanation or clarification that includes--

**(i)** to the extent applicable, a statement of the reasons for which the servicer
believes the account of the borrower is correct as determined by the servicer;
and

**(ii)** the name and telephone number of an individual employed by, or the office
or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written
explanation or clarification that includes--

**(i)** information requested by the borrower or an explanation of why the
information requested is unavailable or cannot be obtained by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office
or department of, the servicer who can provide assistance to the borrower.

131.   AMERICAN HOME MORTGAGE, AHMSI, DEUTSCHE BANK,
and/or DOES 1-10 did not make appropriate corrections to Plaintiffs' account, did
not provide Plaintiffs with a written explanation as to why the account is correct, did
not provide Plaintiffs with a written explanation regarding the information
requested, and did not provide Plaintiffs with the name and telephone number of
someone who could provide assistance to the Plaintiffs.   By not making such
corrections or providing Plaintiffs with a written response including contact
information of someone Plaintiffs could contact to assist them with their account,
AMERICAN HOME MORTGAGE, AHMSI, DEUTSCHE BANK, and/or DOES
1-10 violated RESPA (*12 U.S.C. § 2605(e)(2)*).

///

132.   Plaintiffs have incurred damages to their credit and financial reputation consisting of reduced credit capacity, increased out-of-pocket expenses, and loss of credit expectancy as a result of Defendants' unlawful actions alleged herein.  For example, had Defendants corrected their account or at least provided contact information for someone who could assist Plaintiffs with their Option ARM loan, Plaintiffs, as alleged above, would not have had to make mortgage payments pursuant to undisclosed interest rates, they would not have incurred inappropriate late charges and other fees, nor would they have incurred improper negative amortization on the subject loan.

133.   Furthermore, during the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15). *12 U.S.C. § 2605(e)(3)*.  Since AHMSI began to reject Plaintiffs' monthly mortgage loan payments in June of 2009, it is likely that Defendants provided incorrect overdue loan payments to consumer reporting agencies in violation *12 U.S.C. § 2605(e)(3)*.

134.   Wherefore, AMERICAN HOME MORTGAGE, AHMSI, DEUTSCHE BANK, and/or DOES 1-10's violations of RESPA entitle Plaintiffs to actual damages and statutory damages under *12 U.S.C. § 2605(f)(1)*, as well as costs and attorneys' fees under *12 U.S.C. § 2605(f)(3)*.

## THIRD CAUSE OF ACTION AGAINST AMERICAN HOME MORTGAGE, DEUTSCHE BANK, AND DOES 1-10

(Breach of Contract – Mortgage and Mortgage Payment Covenant)

135.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

136.   Plaintiffs allege that AMERICAN HOME MORTGAGE, DEUTSCHE

BANK, and DOES 1-10, acting in concert together and by agreement chose to purposely apply payments made by the Plaintiffs to fees and charges rather than to principal and interest under the loan in violation of the mortgage payment covenant contained in the uniform mortgage instrument.  The result of this action was that Plaintiffs' loan was improperly declared late with a past amount due.

137.   Had these Defendants properly applied the funds paid by the Plaintiffs on their loan in accordance with the terms of the uniform mortgage instrument, there would not have been any late charges or past amounts due.

138.   As a direct and proximate result of the breach of the mortgage and its mortgage payment covenant, Plaintiffs were injured and damaged.

139.   Plaintiffs claim all damages allowable under law for the breach of contract by the Defendants.

## FOURTH CAUSE OF ACTION AGAINST AHMSI, AMERICAN HOME MORTGAGE, DEUTSCHE BANK, AND DOES 1-10

### (Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 et. seq.)

140.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

141.   The Court has jurisdiction over this action pursuant to Business & Professions Code section 17200 et seq., specifically section 17203, which provides that any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.

142.   Under Business and Professions Code section 17200, any unlawful business act constitutes unfair competition, and a private cause of action can be based on the unlawful act even if the predicate law does not provide for a private cause of action. *Washington Mutual Bank v. Superior Court* (1999, Cal. App. 2d Dist) 75 Cal. App. 4th 773.

143.   At all times relevant to this Complaint, Defendants were engaged in the

1  business of originating, promoting, distributing, purchasing, servicing, or acting as

2  trustee for residential mortgages, and were acting within the scope of that business

3  with regard to the loan provided to Plaintiffs.

4      144.    As set forth above, the predicate unlawful business acts and/or practices

5  include Defendants' failure to comply with the RESPA and Defendants' breach of

6  their mortgage covenants.

7      145.    But for Defendants' unlawful actions, Plaintiff would not have had to

8  hire counsel and pay court filing fees to stop Defendants' unlawful actions.

9  Furthermore, Plaintiff has incurred damages to his credit and financial reputation

10  consisting of reduced credit capacity, increased out-of-pocket expenses, and loss of

11  credit expectancy as a result of Defendants' unlawful actions alleged herein and

12  Defendants causing negative information to appear on Plaintiff's credit report.

13      146.    Defendants' unlawful actions have allowed, or will allow, Defendants

14  to wrongfully foreclose on the Subject Property, transfer title or interest of the

15  Subject Property, and to cause the imminent eviction of Plaintiffs from their home.

16  Because of Defendants' illegal actions, Plaintiffs may be forced out of the Subject

17  Property.   Such eviction will cause Plaintiffs to suffer further immediate and

18  irreparable injury, loss, and damage.

19      147.    As a direct, proximate, and foreseeable result of the unlawful conduct

20  and business acts and practices of Defendants, Plaintiffs and the public have

21  sustained injury.

22      148.    The benefits of Defendants' actions set forth above are far outweighed

23  by the harm they cause.

24      149.    The Defendants' actions set forth above threaten an incipient violation

25  of law or otherwise significantly threaten or harm consumers.

26      150.    WHEREFORE, Plaintiffs are entitled to equitable relief, including

27  restitution, disgorgement of all profits accruing to Defendants because of its

28  unlawful and deceptive acts and practices, attorneys' fees and costs, declaratory

1 | relief, and a permanent injunction enjoining Defendants from their unlawful activity.

2 | **PRAYER FOR RELIEF**

3 | WHEREFORE, Plaintiffs pray for judgment against each Defendant, jointly and

4 | severally, as follows:

5 |    A. For actual damages according to proof;

6 |    B. For compensatory damages as permitted by law;

7 |    C. For consequential damages as permitted by law;

8 |    D. For statutory damages as permitted by law;

9 |    E. For punitive damages as permitted by law;

10 |    F. For rescission;

11 |    G. For equitable relief, including restitution;

12 |    H. For restitutionary disgorgement of all profits Defendants obtained as a result

13 |      of their unfair competition;

14 |    I. For interest as permitted by law;

15 |    J. For Declaratory Relief;

16 |    K. For reasonable attorneys' fees and costs;

17 |    L. For an order that an accounting be made by Defendants of their wrongfully

18 |      obtained payments and profits; and

19 |    M. For such other relief as is just and proper.

22 | Dated: June 18, 2010          By: _____

23 |                       Vincent D. Howard

                      Damian J. Nassiri

24 |                       Gregory H.D. Alumit

25 |                       **HOWARD | NASSIRI, PC**

                      Attorneys for Plaintiffs

Exhibit A

## ADJUSTABLE RATE NOTE

### FIRST FIVE YEAR FIXED PAYMENT – 12MTA

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN  110.000%  OF THE ORIGINAL AMOUNT (OR $ 421,584.90  ).  MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

| May 31, 2006 | Fountain Valley | California |
|---|---|---|
| | (City) | (State) |

18371 Basswood Street, Fountain Valley, CA   92708

(Property Address)

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  383,259.00  plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender.   The Lender is  American Home Mortgage . I will make all payments under this Note in form of cash, check or money order.  I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2.  INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay interest at a yearly rate of  1.900%  until  June 30, 2006 , and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate").  Commencing  July 1, 2006 , I will pay interest at a yearly rate of  6.593%  (the "Subsequent Rate").  Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note.  The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month.  In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I  Will  make  my  monthly  payments  on  1st  day  of  each  month  beginning  on August, 2006 .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied to interest before Principal.  If, on  July 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at PO Box 660029, Dallas, TX  75266-0029 , or at a different place if required by the Note Holder.

**(B) Amount of My Initial    Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S.$ 1,397.51 , unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the __1st__ day of __August__, __2006__, and on that day every month thereafter.  Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index.  The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields").  The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index".  If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ __Two  and  450  Thousandths__ percentage points __2.450__ % ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined.  The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available).  This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than __Nine and 950 Thousandths__ _____ percentage points __9.950__ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective commencing __August 1, 2011__, (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments.  The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date.  My payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of this Note.

Unless Section 4(H) and 4(I) below ~~ly,~~ the amounts ~~of~~ my new monthly p~~ayment,~~ beginning with a Payment Change Date following the ~~P~~ayment Change Date under Section ~~will~~ be limited to 7 ½% more or less than the amount I have ~~been~~ paying.  This payment cap applies only ~~to~~ the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments.  Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion.  For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate.  For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to _____ 110.000% of the principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that _110.000%_ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation.  The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the _Five_ anniversary of the due date of the first monthly payment, and on that same day every _Five_ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

Any notice that must be g____ to ____ e Holder under this Note wil__ gi____ ____ nailing it by first class mail to the Note Holder at the address ____ed in Section 3(A) above or at a differen__. ____ress if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay

these sums prior to th_ _xpir_ _ _ this period, Lender may in _e ar_ _ _dies permitted by this Security Instrument without fur__ notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Gary E. Mertan                  -Borrower        Jill L. Mertan                  -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

DOC #:944871                    APPL #:0001296794

TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT: American Home Mortgage
111 Pacifica Suite 305
Irvine, CA  92618

☐ Preliminary  ☒ Final
DATE: 05/31/06
LOAN NO.:
Type of Loan: Conventional
APP NO.:0001296794

BORROWERS: Gary E. Mertan
Jill L. Mertan

ADDRESS:    18371 Basswood Street
CITY/STATE/ZIP: Fountain Valley, CA  92708
PROPERTY:   18371 Basswood Street
Fountain Valley, CA 92708

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.759   % | $  574,401.89 | $ 375,957.49 | $ 950,359.38 |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 48 | $1,397.51 | August 1, 2006 | 311 | $2,831.02 | August 1, 2010 |
| 1 | $2,831.02 | July 1, 2046 | | | |

DEMAND FEATURE: ☒ This loan does not have a Demand Feature.  ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 18371 Basswood Street
Fountain Valley, CA 92708

ASSUMPTION: Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms.
☒ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:  $  100.00

PROPERTY INSURANCE: ☒ Property hazard insurance in the amount of $ 383,259.00  with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is  ☒ is not available through the lender at an estimated cost of  N/A  for a  year term.

LATE CHARGES:   If your payment is more than  15  days late, you will be charged a late charge of  5.000  % of the overdue payment.

PREPAYMENT:   If you pay off your loan early, you
☒ may  ☐ will not  have to pay a penalty.
☐ may  ☒ will not  be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date,  and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____        _____
Gary E. Mertan        BORROWER / DATE        Jill L. Mertan        BORROWER / DATE

_____        _____
BORROWER / DATE        BORROWER / DATE
APPL #:0001296794   LOAN #:0000000000

DE~~~~ ~ON OF TRUTH-IN-LENDING TERMS

<u>ANNUAL PERCENTAGE RATE</u>

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

<u>PREPAID FINANCE CHARGES</u>

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

<u>FINANCE CHARGE</u>

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

<u>AMOUNT FINANCED</u>

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate/Settlement Statement (HUD-1 or 1A). For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

<u>TOTAL OF PAYMENTS</u>

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable) over the life of the loan.

<u>PAYMENT SCHEDULE</u>

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable) over the life of the loan. These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

Initials:_____

**EXHIBIT B**

**NOTICE TO CUSTOMER REQUIRED BY FEDERAL LAW FEDERAL RESERVE REGULATION Z**
**NOTICE OF RIGHT TO RESCIND (GENERAL)**

### NOTICE OF RIGHT TO CANCEL

Conventional
(Identification of Transaction)

ACCOUNT NO. 0001296794

### 1. Your Right to Cancel

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1) The date of the transaction, which is _____ ; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### 2. How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747  Attn. Mail Stop 800

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____       _____
SIGNATURE                                                                    DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____       _____
BORROWER/OWNER Gary E. Mertan          DATE          BORROWER/OWNER                    DATE

_____       _____
BORROWER/OWNER                    DATE          BORROWER/OWNER                    DATE

DOC #:942349
-68 (9712)    UM31 9712.02
VMP MORTGAGE FORMS - (800)521-7291

APPL #:0001296794
12/97

NOTICE TO CUSTOMER REQUIRED BY FEDERAL LAW FEDE... L RESERVE REGULATION Z
NOTICE OF RIGHT TO RESCIND (GENERAL)

## NOTICE OF RIGHT TO CANCEL

Conventional
(Identification of Transaction)                    ACCOUNT NO. __0001296794__

### 1. Your Right to Cancel

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

    (1)   The date of the transaction, which is
    (2)   The date you received your Truth in Lending disclosures; or      ; or
    (3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### 2. How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
    American Home Mortgage
    520 Broadhollow Road
    Melville, NY 11747  Attn. Mail Stop 800

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of
            (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    _____
SIGNATURE                                             DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____      _____
BORROWER/OWNER Jill L. Mertan    DATE      BORROWER/OWNER           DATE

_____      _____
BORROWER/OWNER           DATE      BORROWER/OWNER           DATE

DOC #:942349
VMP -68 (9712)   UM61 9712.02      APPL #:0001296794
                                  12/97
VMP MORTGAGE FORMS - (800)521-7291

### NOTICE OF RIGHT TO CANCEL

Conventional
(Identification of Transaction)

ACCOUNT NO. __0001296794__

### 1. Your Right to Cancel

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

    (1)   The date of the transaction, which is         ; or
    (2)   The date you received your Truth in Lending disclosures; or
    (3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### 2. How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
    American Home Mortgage
    520 Broadhollow Road
    Melville, NY 11747  Attn. Mail Stop 800

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
SIGNATURE                                                       DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____     _____
BORROWER/OWNER Gary E. Mertan      DATE      BORROWER/OWNER                  DATE

_____     _____
BORROWER/OWNER                  DATE      BORROWER/OWNER                  DATE

DOC #:942349                 APPL #:0001296794
VMP -68 (9712)    UM31 9712.02         12/97
VMP MORTGAGE FORMS - (800)521-7291

NOTICE TO CUSTOMER REQUIRED BY FEDERAL LAW FEDERAL _ RESERVE REGULATION Z
NOTICE OF RIGHT TO RESCIND (GENERAL)

## NOTICE OF RIGHT TO CANCEL

Conventional
(Identification of Transaction)                        ACCOUNT NO. __0001296794__

### 1. Your Right to Cancel

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)     The date of the transaction, which is                                    ; or
(2)     The date you received your Truth in Lending disclosures; or
(3)     The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### 2. How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747  Attn. Mail Stop 800

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of
(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____               _____
SIGNATURE                                                DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____          _____
BORROWER/OWNER Jill L. Mertan            DATE     BORROWER/OWNER                    DATE


_____          _____
BORROWER/OWNER                           DATE     BORROWER/OWNER                    DATE

DOC #:942349
VMP -68 (9712)   UM31 9712.02      APPL #:0001296794
                                   12/97
VMP MORTGAGE FORMS - (800)521-7291

NOTICE OF RIGHT TO RESCIND (GENERAL)

### NOTICE OF RIGHT TO CANCEL

_____Conventional_____    ACCOUNT NO. __0001296794__
(Identification of Transaction)

### 1. Your Right to Cancel

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1) The date of the transaction, which is _____; or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### 2. How to Cancel

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747 Attn. Mail Stop 800

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____    _____
SIGNATURE                                 DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-in-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____    _____
BORROWER/OWNER Gary E. Mertan    DATE      BORROWER/OWNER         DATE

_____    _____
BORROWER/OWNER         DATE      BORROWER/OWNER         DATE

DOC #:942349
⓿ -68 (9712)   UM31 9712.02    APPL #:0001296794
                                      12/97
VMP MORTGAGE FORMS - (800)521-7291

**EXHIBIT C**

# HOWARD | NASSIR1
### A LIMITED LIABILITY PARTNERSHIP

ARENA CORPORATE CENTER
1600 SOUTH DOUGLASS ROAD • FIRST FLOOR • ANAHEIM, CALIFORNIA 92806
TELEPHONE / 800.872.5925 • FACSIMILE / 888.533.7310

DAMIAN J. NASSIRI
dnassiri@howardnassiri.com

March 16, 2009

**VIA U.S. CERTIFIED MAIL**
American Home Mortgage Corp.
5401 N. Oracle Road
Tucson, AZ 85704

National Registered Agents, Inc.
c/o American Home Mortgage Corp.
Which will do business in California
As A H M C Funding
2875 Michelle Dr Ste 100
Irvine, CA 92606

Re:   **Rescission Demand Pursuant to The Truth In Lending Act**
         Rescission of Loan Numbers: American Home Mortgage Loan # 0031169758
         Borrowers: Gary Mertan and Jill Mertan
         Property Address: 18371 Basswood Street, Fountain Valley, CA 92708

ATTENTION: LEGAL DEPARTMENT

My law firm represents Gary Mertan and Jill Mertan concerning the loan transaction they entered into with American Home Mortgage, Inc., Loan Number 0031169758 on or about May 31, 2006, with regard to the property located at 18371 Basswood Street, Fountain Valley, CA 92708. It is our understanding that American Home Mortgage, Inc. currently holds the note (loan # 0031169758).

We have been authorized by our clients to rescind this transaction and hereby exercise that right pursuant to the Federal Truth-In-Lending Act (hereafter "TILA"), *15 U.S.C. § 1635, Regulation Z § 226.23*. The claims listed below, which give rise to the extended rescission period, are sufficient under the referenced statutes, but are not intended to be all inclusive. Additional violations of the TILA and applicable state lending laws may not be known at this time.

**TRUTH IN LENDING DISCLOSURE STATEMENT FOR FIRST NOTE**

The Adjustable Rate Mortgage ("ARM") loan sold to our clients for their mortgage is a deceptively devised financial product. The product was sold based upon a low, fixed interest rate, when in fact the client was charged a different, much greater interest rate than the rate upon which the payment amounts listed in the Truth In Lending Disclosure Statement ("TILD") were based. The Truth In

# HOWARD | NASSIRI
#### A LIMITED LIABILITY PARTNERSHIP

AMERICAN HOME MORTGAGE CORP.
March 16, 2009
Page 2

Lending disclosure statement and Note received by my clients are defective because they do not clearly and conspicuously disclose the material terms of the loan and do not accurately reflect the clients' legal obligation on the loan in violation of 12 C.F.R. § 226.17 and 226.19, entitling the client to an extended rescission of up to 3 years after consummation of the loan.

Specifically, the lender failed to clearly and conspicuously disclose to our client in the ARM loan documents, and in the required TILD accompanying the loan, (i) the actual interest rate on which the payment amounts listed in the TILD are based (12 C.F.R. § 226.17 (c)); (ii) that making the payments according to the payment schedule listed in the TILD will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the payment amounts listed on the TILD are insufficient to pay both principle and interest.

Our clients' payment schedule was base on an initial teaser rate 1.900%, which the borrower only had for a limited period of time and which was guaranteed to change on the first change date, despite the fact that the loan documents only state the interest rate "may" change. The Note also states that "Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal". The truth is that if our clients made the payments according to the payment schedule, no monies would be applied to the principal at all and negative amortization was guaranteed to occur, despite the fact that the Note only characterizes negative amortization as only a mere possibility.

## CLAIMS RELATED TO THE RIGHT TO CANCEL FORM FOR BOTH NOTES

TILA, at *15 U.S.C. § 1635(a)* as implemented under *Regulation Z § 226.23 (b)*, requires that each borrower receive two (2) completed copies of the right to rescind notice. Such notice is required to clearly and conspicuously disclose: (1) the retention or acquisition of a security interest in the consumer's principal dwelling; (2) the consumer's right to rescind the transaction; (3) how to exercise the right to rescind with a form for that purpose, designating the address of the creditor's place of business; (4) the effects of rescission; and (5) the date the rescission period expires. *Regulation Z § 226.23(b)(1)(i-v)*.

Mr. and Mrs. Mertan received two blank right to cancel notices per borrower. The notices were defective in that each notice for were blank, containing no expiration date. The 9th Circuit Court of Appeals has held that such a violation gives rise to an extended rescission period by. *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir. 1986). The extended rescission period is three (3) years.

Attached to this letter is a copy of the defective Right to Cancel notices for your review. Please take note that while your institution may have two properly completed Right to Cancel notices per loan in your possession, our client did not receive two copies that was filled in properly. Thus, the closing agent or notary public failed to fully complete the copies which were provided to the borrowers. The failure of the originating lender to provide fully completed copies of the Right to Cancel notices to the borrowers is a material violation of TILA, and such violation provides a three-year right to rescind the loan transaction.

## ⌐1OWARD | NASSIⱭ

A LIMITED LIABILITY PARTNERSHIP

AMERICAN HOME MORTGAGE CORP.
March 16, 2009
Page 3

It is likely that American Home Mortgage, Inc., did receive acknowledged copies of the Right to Cancel Notices, however, pursuant to TILA, possession of such an acknowledged document does no more than create a **rebuttable presumption** of delivery.

*15 U.S.C. 1635(c)* reprinted as follows:

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms and a statement is required to be given pursuant to this section does no more than create a **rebuttable presumption** of delivery thereof. (emphasis added)

Courts have held that "A debtor seeking to overcome the presumption faces a "low burden". In analyzing the borrower's claims it is important and relevant to examine the facts surrounding the subject loan transaction itself.

### EFFECT OF RESCISSION

The security interest held by American Home Mortgage, Inc. and/or its assignees is void upon our rescission (See *15 U.S.C. § 1635; Regulation Z § 226.23 and 15 U.S.C. § 1641(c)*). Pursuant to the Regulation, you have twenty (20) days after receipt of this notice of rescission to return to my clients all monies paid and to take action necessary or appropriate to reflect termination of the security interest. Upon the discharge of your statutory duties, my clients will perform all necessary actions required by *15 U.S.C. § 1635(b); Regulation Z, §§ 226.15(d)(3), 226.23(d)(3)*.

Please be advised that if you do not cancel the security interest and return all consideration paid by our clients prior to the expiration of our loan commitment, you will be responsible for actual and statutory damages pursuant to *15 U.S.C. § 1640(a)*.

Attached for your reference are copies of the defective right to cancel notices, the Note and a client authorization. We look forward to your timely reply and efficient resolution of this matter so that all parties may be spared further expense.

At this time it is our belief that you are the current holder of the note(s) referenced in this letter. If this is not correct, we hereby demand that you forward a copy of this rescission demand immediately to the note holder. If you are merely the servicer of this loan or are holding the note only for administrative convenience, please forward this rescission demand to the note holder(s). In addition, this letter shall serve as a qualified written request to state the name, address, and telephone number of the owner of the obligation, as required by RESPA and 15 U.S.C. Section 1641 (f)(2).

We demand that you cease all foreclosure activity on this loan and that no negative credit reporting take place during this dispute, pursuant to the Truth In Lending Act and Fair Credit Reporting Act. Please also send me a copy of the client's payment history and other documentation showing the loan

# HOWARD NASSIRI
### A LIMITED LIABILITY PARTNERSHIP

AMERICAN HOME MORTGAGE CORP.
March 16, 2009
Page 4

disbursements, loan charges, payments made and current principal balance due along with the complete working file from original loan application and initial disclosures through funding of the executed documents.

## SETTLEMENT PROPOSAL

Lastly, despite our demand for rescission, our client is amenable to settle this matter by way of a loan modification with some reduction in the principal amount owed. Please advise if this is feasible for your client. Thank you.

Sincerely,

HOWARD NASSIRI

DAMIAN J. NASSIRI

1  VINCENT D. HOWARD, State Bar No. 232478
   vhoward@howardnassiri.com
2  DAMIAN J. NASSIRI, State Bar No. 231667
   dnassiri@howardnassiri.com
3  GREGORY H. D. ALUMIT, State Bar No. 257124
   gregory.alumit@howardnassiri.com
4  **HOWARD | NASSIRI, PC**
   1600 South Douglass Road, First Floor
5  Anaheim, CA 92806
   (800) 872-5925 Telephone
6  (888) 533-7310 Facsimile
   www.HOWARDNASSIRI.com
7
8  Attorneys for Plaintiffs, GARY E. MERTAN and JILL L. MERTAN
9
                    **UNITED STATES DISTRICT COURT**
10
              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
11
   **GARY E. MERTAN and JILL L.**   ) CASE NO.:  SAVC09-723DOC(PJWX)
12 **MERTAN,**                       )
                                     )
13        **Plaintiffs,**            ) <u>**PROOF OF SERVICE**</u>
                                     )
14    **v.**                         )
                                     )
15                                   )
   **AMERICAN HOME MORTGAGE**        )
16 **SERVICING INC.; AMERICAN**      )
                                     )
17 **HOME MORTGAGE; DEUTSCHE**       )
   **BANK NATIONAL TRUST**           )
18 **COMPANY AS TRUSTEE; AND**       )
19 **DOES 1-10,**                    )
                                     )
20        **Defendants.**            )
                                     )
21 _____
22
23        I, Amber Grow, declare under penalty of perjury that the following facts are
24 true and correct:
25        I am a resident of the State of California and over the age of 18 years and not
26 a party to or interested in the above-entitled matter.   I am an employee of
27 HOWARD | NASSIRI, PC, and my business address if 1600 South Douglass Road,
28 First Floor, Anaheim, CA 92806.   On June 18, 2010, I served the following
   documents:

1.   FOURTH AMENDED COMPLAINT

By:

X MAIL: by placing a true copy(ies) thereof in a sealed envelope(s) in the outgoing mail in my office for deposit in the United States mail, with postage fully prepaid, addressed as show below.  I am readily familiar with the business practice at my place of business for collection and processing of outgoing mail with the U.S. Postal Service that same day in the ordinary course of business.

Said document(s) was/were served on the following persons:

T. Robert Finlay, Esq.
Christina D. Rovira, Esq.
WRIGHT, FINLAY & ZAK, LLP
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Attorneys for American Home Mortgaging Servicing, Inc. & Mortgage Electronic Registration Systems, Inc.

Deutsche Bank National Trust Company,
as Trustee
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

American Home Mortgage
111 Pacifica, Suite 305
Irvine, CA 92618

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct:

Executed on June 18, 2010, at Anaheim, California.

Amber Grow

PROOF OF SERVICE
- 2 -